**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **1:10-cv-183** |
| **v.** | ) | |
| | ) | |
| **LARRY A. LORENO, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Pending before the Court is the MOTION FOR PARTIAL SUMMARY JUDGMENT

(ECF No. 56) filed by Plaintiff, the United States of America (also referred to herein as the

"Government"). The United States has filed a brief (ECF No. 57) as well as a Concise Statement

of Material Facts (ECF No. 58) in support of its motion. Defendant Larry A. Loreno ("Loreno")

has filed a brief in opposition to the Government's motion (ECF No. 61), and the Government

has filed its reply (ECF No. 64). Accordingly, the motion is ripe for disposition.

### I.  Factual and Procedural Background[1]

Loreno resides within and owns numerous real properties located within this judicial

district.  (Compl. ¶¶ 6, 22-52, ECF No. 1; Loreno Answer ¶¶ 1, 9-20, ECF No. 25.)  In particular,

Loreno has an ownership interest in several properties located in Mercer County, Pennsylvania.

These parcels, collectively referred to as the "Mercer County properties," are situated at 320

Main Street in the Borough of Greenville (the "320 Main Street Property"), Route 58 in Greene

Township (the "Route 58 Property"), and Route 18 in Hempfield Township (the "Route 18

---

[1] The following background is taken from the Court's independent review of the motion for summary judgment, the
filings in support of and in opposition thereto, and the record as a whole.

Property").  Loreno also has, or had during times relevant to this litigation, an ownership interest in several properties located in Crawford County, Pennsylvania.  These parcels, collectively referred to as the "Crawford County properties," consist of certain real property located on Brown Avenue in Sadbury Township (the "Brown Avenue Property"), real property situated at Fitch Road in South Shenango Township (the "Fitch Road Property"), and a 10.353-acre parcel of real estate located in South Shenango Township (the "10-acre South Shenango Property").  (Compl. ¶¶ 22-24, 28-30, 34-36, 40-42, 46-48, 52-54; Loreno Answer ¶¶ 9-20.)

In 2002 and 2003, the United States made assessments against Loreno for unpaid federal income taxes relative to tax years 2000, 2001, and 2002.  (Compl. ¶¶ 14-18; Loreno Answer ¶ 4; Decl. of Dennis L. Bohn ¶¶ 1, 4-5, ECF No. 56-3 and 38-3; Pl.'s Ex. 101-103, ECF No. 38-4; Pl.'s Ex. 104-106, ECF No. 38-5.)  Those taxes remained unpaid and, on July 28, 2010, the United States commenced this civil action with the filing of its eight-count "Complaint for Federal Taxes" against Loreno and various other Defendants who had an ostensible ownership interest in, or lien(s) upon, Loreno's property (ECF No. 1).  The matter was originally assigned to United States District Judge Sean J. McLaughlin.[2]

In its complaint, the Government alleged that it has valid and subsisting tax liens arising from the assessments that were made against Loreno.  To satisfy these liens, the United States sought a court order permitting foreclosure against, and a judicial sale of, Loreno's property, including the aforementioned parcels of real estate.

---

[2] Subject matter jurisdiction over this case is premised upon 28 U.S.C. §§ 1331, 1340, and 1345 as well as 26 U.S.C. § 7402(a).

In accordance with 26 U.S.C. §7403(b),[3] the Government originally named as Defendants Loreno, his former wife, Darlene A. Loreno, the Mercer County Tax Claim Bureau, Greenville Borough, Bank of America, the Commonwealth of Pennsylvania, and the Crawford County Tax Claim Bureau. On June 10, 2013 Judge McLaughlin entered a default judgment against all of the named Defendants except for Loreno and Bank of America (ECF No. 45).

On June 12, 2013, Judge McLaughlin granted partial summary judgment in favor of the United States and against Loreno relative to Count I of the complaint (ECF No. 47). In doing so, Judge McLaughlin reduced the Government's assessments of Loreno's federal income tax liabilities to judgment in the amount of $141,768.70, plus interest accruing thereon (ECF No. 48).

After the case was transferred to the undersigned district judge,[4] the United States entered into a stipulation with Bank of America concerning the parties' competing claims relative to the subject properties (ECF No. 53). According to the Government, this stipulation resolved all of its claims against Bank of America. (*See* Sept. 10, 2013 Status Report ¶1, ECF No. 51.) The stipulation was approved by this Court on September 17, 2013 (ECF No. 54). Accordingly, the only outstanding claims at this juncture are the Government's foreclosure claims against Defendant Loreno at Counts II through VIII of the complaint.

On November 14, 2013, the Government filed a report concerning the status of this litigation (ECF No. 55). In its status report, the United States disclosed that it would seek an entry of summary judgment with regard to the foreclosure claims at Counts II, III, IV, and VII of

---

[3] That statute directs that "[a]ll persons having liens upon or claiming any interest in the property involved in [a foreclosure] action shall be made parties thereto." 26 U.S.C. §7403(b).

[4] The case was transferred to the undersigned on August 28, 2013 by order of Chief Judge Joy Flowers Conti (ECF No. 49).

the complaint. The United States further advised, with regard to Counts V, VI, and VIII, that the real and personal property identified in those counts had been sold at some point after the commencement of this litigation. It is the Government's position that the federal tax liens continue to attach to the properties which are the subject of Counts V, VI, and VIII, inasmuch as the sales allegedly occurred without proper notice and in violation of this Court's jurisdiction. In light of these circumstances, the Government sought leave to amend its complaint with respect to Counts V, VI, and VIII in order to substitute the new title holders as parties to this action and pursue a judgment against them.

By text order entered on November 15, 2013, this Court granted the United States leave to file, on or before November 29, 2013, its motion for partial summary judgment as well as any amendments to the complaint. The United States proceeded to file the pending motion for partial summary judgment on November 27, 2013 (ECF No. 56), together with its supporting brief (ECF No. 57) and a concise statement of material facts (ECF No. 58). Consistent with the Government's prior status report, its motion seeks summary judgment relative to the foreclosure claims at Counts II, III, IV, and VII of the complaint.

On November 29, 2013, the United States filed its amended complaint (ECF No. 59) which adds new Defendants and allegations relative to Counts V, VI and VIII but otherwise leaves intact the original allegations set forth in Counts II, III, IV, and VII. Because the amended complaint is now the operative pleading, and because it makes no changes affecting the Government's original claims at Counts II, III, IV, and VII, the Court will construe the Government's Rule 56 motion as a request for summary judgment relative to Counts II, III, IV, and VII of the *amended complaint*.

## II. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the clams in question. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Country Floors, Inc. v. Partnership Composed of Gepner and Ford*, 930 F.2d 1056, 1061 (3d Cir.1990). A material fact is one whose resolution will affect the outcome of the case under applicable law. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986).

Once the moving party meets its initial burden, it then becomes the non-movant's burden to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Company v. Zenith Radio Corp*., 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa*., 891 F.2d 458, 460-461 (3d Cir.1989). Under Rule 56(c)(1), a non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations…, admissions, interrogatory answers, or other materials; or (B) showing that the materials citied [by the opposing party] do not establish the absence … of a genuine dispute..." Fed. R. Civ. P. 56(c)(1).

At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247-249. *See Matsushita Elec.*

*Industrial Co.,* 475 U.S. at 586–587 ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'").

### III. Discussion

In Counts II, III, IV, and VII of the amended complaint, the United States seeks a judicial determination:  (a) that it has valid and subsisting tax liens that attach to all property and rights to property of Loreno identified therein, (b) that the federal tax liens should be foreclosed, and (c) that the real properties identified in Counts II, III, IV, and VII of the complaint should be sold at a judicial sale.  The four properties at issue include the Mercer County properties situated at 320 Main Street (Count II), Route 58 (Count III) and Route 18 (Count IV) as well as the 10-acre South Shenango Property located in Crawford County (Count VII).

The federal tax lien statute, 26 U.S.C. §6321, provides that, "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount … shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."  This statutory lien arises at the time the assessment is made and continues "until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time."  26 U.S.C. §6322.  *See also United States v. Denneny,* Civil Action No. 12-4057, 2013 WL 6671495 *3 (E.D. Pa. Dec. 18, 2013).  Pursuant to 26 U.S.C. 7403(a), the United States may sue to foreclose its tax liens against a taxpayer's property in cases "where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof ..." 26 U.S.C. § 7403(a).  Where the United States seeks foreclosure, the district court must, after notice to the parties, "finally determine the merits of all claims to and liens upon the property," *id.* at § 7403(c), after which point the court "may decree a sale of such property… and a distribution of the proceeds of such

sale according to the findings of the court in respect to the interests of the parties and of the United States." *Id. See also United States v. Zimmerman,* 491 F. App'x 341, 346 (3d Cir. 2012) ("IRC Section 7403 establishes the authority for a court to order the judicial sale of property in order to satisfy unpaid tax liabilities.") (citing 26 U.S.C. § 7403).

In this case, the record establishes that assessments were made upon Loreno for unpaid federal income taxes relative to the tax years 2000, 2001 and 2002. (Decl. of Dennis L. Bohn ¶¶ 1, 4-5, ECF No. 56-3 and 38-3; Pl.'s Ex. 101-103, ECF No. 38-4; Pl.'s Ex. 104-106, ECF No. 38-5.) These assessments were previously recognized as valid and reduced to judgment in the amount $141,768.70, plus interest, by Judge McLaughlin. (*See* Mem. Op. and Order Granting Mot. for Part. Summ. J., June 12, 2013, ECF No. 48).

Pursuant to 26 U.S.C. §§ 6321 and 6322, tax liens arose as of the date the assessments were made and attached to all of Loreno's property and rights in property, including the real properties which are the subject of Counts II, III, IV, and VII. *See United States v. Green,* 201 F.3d 251, 253 (3d Cir. 2000). The record before this Court establishes that notices of the federal tax liens were duly filed with the Prothonotaries of Mercer County and Crawford County in accordance with federal regulation. (*See* Mem. Op. and Order Granting Mot. for Part. Summ. J at 6, June 12, 2013, ECF No. 48; Bohn Decl. ¶¶ 10-11, ECF No. 56-3; Pl.'s Ex. 107, ECF No. 56-4; Pl.'s Ex. 108, ECF No. 56-5; *see also* Internal Revenue Regulation 301.6323(f)-1.) In addition, those parties having a potential lien or interest in the subject properties have been joined in this action. Accordingly, the Court must consider whether, based on the current record, there is any genuine issue of material fact concerning the parties' respective claims to, and liens upon, the subject properties as might preclude the relief sought by the United States. *See* 26 U.S.C. §7403(c).

In his brief in opposition to the United States' motion, Loreno does not dispute that the Government's tax liens are valid and enforceable, nor does he contest the Government's request to foreclose against the 10-acre South Shenango Property identified in Count VII, which is titled solely in his name. Rather, Loreno argues that this Court should exercise its discretion so as to defer the sale of the Mercer County parcels as issue in Counts II, III and IV until after the Government has had an opportunity to foreclose against and sell the Crawford County properties identified in Counts V and VI of the amended complaint. To that end, Loreno requests that the sale procedure observe the following order:

1. Sell the Crawford County property described in Count VII of the Complaint;

2. Defer further sale procedures until a decree of sale is entered as to the Crawford County pieces of property described in Count V and Count VI of the Complaint;

3. Sell the Mercer County property described in Count III of the Complaint;

4. Sell the Mercer County property described in Count IV of the Complaint, when it is appropriate so to do;

5. As a last resort, sell the Mercer County property described in Count II of the Complaint, it being noted that this is defendant Loreno's business office.

(Def. Loreno's Br. Opp. to Pl.'s Mot. Part. Summ. J. at 4, ECF No. 61.) Loreno's argument for postponing the sale of the Mercer County properties appears to be premised on his assertion that those properties are jointly owned and/or encumbered by judgment liens held by Defendant Bank of America. In addition, with respect to the 320 Main Street Property identified in Count II, Loreno requests that this property be the last one sold inasmuch as it is the location of his business office.

The United States opposes Loreno's request on the ground that it is both premature and inappropriate. The request is premature, the Government contends, because it has not yet

requested an order of sale. The request is inappropriate, according to the Government, because it benefits Loreno to the detriment of the United States and other third parties.

The foreclosure provisions set forth in 26 U.S.C. §7403 "allow[ ] for the judicial sale of any property in which the delinquent taxpayer has an interest even if others also claim an interest as long as those having an interest are made a party to the action and there is 'recognition of third-party interests through the mechanism of judicial valuation and distribution.'" *United States v. Zimmerman,* 491 F. App'x at 346 (quoting *United States v. Rodgers,* 461 U.S. 677, 693-94 (1983)). In *United States v. Rodgers,* the Supreme Court held that district courts also have limited equitable discretion under §7403 to decline to order a forced sale when innocent third parties having an interest in the property might be unduly harmed by that process. *See generally* 461 U.S. at 703-11. The Court explained that this limited discretion to refuse a forced sale is not "unbridled," *id.* at 709, but should instead be exercised "rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." *Id.* at 711. *See also Zimmerman,* 491 F. App'x at 346 n.6 (district courts have "very limited discretion not to order a sale").

The Supreme Court outlined in *Rodgers* four factors which district courts can consider when determining whether to exercise their limited discretion to refuse a forced sale. 461 U.S. at 710-11. These factors have been summarized as follows:

> First, the court considers the extent to which the government's financial interest would be prejudiced if the forced sale was limited to the partial interest owned by the person liable for delinquent taxes. Second, the court considers whether the third party had a legally recognized expectation (because of the type of property interest owned by the third party) that his or her separate property would not be subject to forced sale by the delinquent taxpayer or his creditors. Third, the court should consider the likely prejudice to the third party, and fourth, the court should consider the relative value of the non-liable and liable interests held in the property.

*United States v. Stewart,* Civil Action No. 10-0400, 2012 WL 71709 *3 n.2 (W.D. Pa. Jan. 9, 2012) (citing *Rodgers,* 461 U.S. at 710–11). The Court cautioned in *Rodgers* that these factors are non-exhaustive and should not be used "as a 'mechanical checklist' to the exclusion of common sense and consideration of special circumstances." 461 U.S. at 711.

To the extent that consideration of these factors is appropriate in this case,[5] the Court notes that its analysis is impeded somewhat by the fact that neither party has expressly addressed the foregoing considerations or proffered evidence relating to them. Nevertheless, based on the record at hand, the application of common sense, and consideration of the particular facts of this case, the Court finds that the equities do not favor the relief requested by Loreno even when the record is construed in the light most favorable to him.

Initially, the Court notes that Loreno's argument as it relates to Count IV is based on the mistaken assertion that the subject parcel of real estate is titled jointly in the name of Loreno and his now deceased first wife, Dorothy A. Loreno. Loreno posits that the Government's ability to foreclose its tax lien against the Route 18 Property identified in Count IV is "open to question" because of the fact that Dorothy A. Loreno died approximately two years ago and left a daughter as her sole heir. (Def. Loreno's Br. Opp. to Pl.'s Mot. Part. Summ. Judg. at 2.) As the Government points out, however, the deed that was submitted in support of the pending motion shows that Dorothy A. Loreno transferred all her interest in the Route 18 Property to Loreno some 35 years ago. (*See* Pl.'s Ex. 111, ECF No. 56-8; *see also* Compl. ¶34; Loreno Answer ¶

---

[5] The Court notes that Loreno is not necessarily attempting to block the sale of the Mercer County properties outright; rather he requests that the Crawford County properties be sold prior to the sale of the Mercer County properties. Of course, if sale of the Crawford County properties satisfied the United States' judgment, it would become unnecessary for the Court to order the sale of the Mercer County properties.

34.)  Because the record in this case establishes that Loreno holds exclusive title to the Route 18

Property, there is no basis to defer a judicial sale of that property.

With respect to Counts II and III, Loreno correctly notes that the 320 Main Street

Property and the Route 58 Property are jointly titled in the name of himself and his ex-wife,

Darlene A. Loreno (hereinafter, "Darlene" or "Darlene Loreno").  Nevertheless, while Darlene is

a title-holder to the Count II and III properties, the United States accurately notes that she

forfeited any right to object to the sale of those properties by virtue of the default judgment

which was entered against her on June 10, 2013.  (*See* Order of Judgment, June 10, 2013, ECF

No. 46 (stating that Darlene A. Loreno "shall be, and hereby is, precluded from preventing the

sale of the subject real and personal property and from asserting any defense in this case").)

Accordingly, Darlene's ownership interest in the Count II and III properties provides no basis for

deferring the sale of those parcels, provided that she is appropriately compensated with her share

of the sales proceeds.

Even if an analysis of Darlene's interests pursuant to *Rodgers* is required, however,[6] the

Court finds that the equities on balance do not weigh in favor of deferring the Government's sale

of the 320 Main Street and Route 58 Properties.  The first *Rodgers* factor involves consideration

of the likely financial prejudice to the government if it were unable to sell the entire jointly-held

property in order to satisfy its judgment.  Neither party has supplied evidence on this point, and it

is not entirely clear from the record what type of interest Darlene has in the Count II and III

---

[6] *See United States v. Zimmerman,* 491 F. App'x at 347 (leaving open the question whether the district court should have considered and adjudicated under 26 U.S.C. §7403(c) a non-delinquent spouse's potential claim in the delinquent taxpayer's property notwithstanding the fact that a default judgment had been entered against the spouse in the government's foreclosure suit, as this issue "could have been, but was not, raised [by the spouse] on a direct appeal from the foreclosure order itself").

properties or what those properties are worth.[7] If Loreno and his former wife were tenants by the entireties during their marriage, their divorce would have rendered them tenants in common "except as otherwise provided by an order entered [under Chapter 35 of Pennsylvania's domestic laws relating to divorce]." 23 Pa. C.S.A. § 3507(a). As tenants in common, Loreno and his ex-wife would each possess a fifty percent interest in the properties. *See id.* "Courts have held, and common sense dictates, that the sale of a partial interest in property, particularly where the remaining interest is held by someone who resides at the property, will generally yield less than if [the] entire property is sold." *Smith v. United States,* Civil Action No. 3:11–CV–01996 (VLB), 2014 WL 902589 *15 (D. Conn. March 7, 2014) (quoting *United States v. Anderson,* No. 08-CV-6426-MAT, 2010 WL 5072958 *3 (W.D.N.Y. Dec. 10, 2010)). *See also United States v. Bierbrauer*, 936 F.2d 373, 376 (8th Cir.1991) (finding that, since"[t]here is no real prospect that [the tax payer's] interest could be sold separately" when the property was a co-tenancy with a non-liable third party, the first factor weighed in favor of the Government). In this case, there is no suggestion that Darlene Loreno resides on either of the subject properties; on the contrary, Loreno represents that the 320 Main Street Property is the location of his business office (*see* Def.'s Br. Opp. to Pl.'s Mot. Part. Summ. J. at 4), and the description of the Route 58 Property as set forth in the record does not include any description of buildings or improvements upon the land. (*See* Compl. ¶ 28, Def.'s Answer ¶ 11; Amended Compl. ¶ 32, Pl.'s Ex. 110, ECF No. 56-7.) Moreover, the return of service for Darlene A. Loreno indicates that she is currently residing in State College, Pennsylvania, outside of this judicial district. (*See* Proof of Service, ECF No.

---

[7] The Court notes that Loreno, in his pretrial statement, represented that the 320 Main Street Property at Count II is worth between $50,000 and $60,000, while the Route 58 Property at Count III is worth $15,000. (Def.'s Pretrial Statement 2-3, ECF No. 42.) Although Loreno is reportedly a licensed real estate broker and indicated his intention to testify at trial to the value of his various properties, id. at 4, he has not supplied any evidence in support of his valuations by way of affidavit or otherwise.

8-1.)  Although it stands to reason that Loreno's interest in the two properties would be worth less if sold separately rather than if sold as part of the entire property, s*ee Smith, supra,* at 15, some courts have been reluctant to accord this consideration weight when the Government fails to adduce proof of prejudice.  *See, e.g., United States v. Anderson, supra,* at *3; *United States v. Digiullo*, No. 95–cv–219S, 1997 WL 834820, at *15 (W.D.N.Y. Nov. 5, 1997).  Because the record on this point is not developed, the Court will not accord the first *Rodgers* factor significant weight.[8]

The second *Rodgers* factor requires us to consider whether the non-liable third party had a legally recognized expectation that the property would not be subject to a forced sale.  This factor necessarily involves an inquiry into the nature of the property interest under state law.  *See Rodgers,* 461 U.S. at 683.  *See also United States v. Nat'l Bank of Commerce,* 472 U.S. 713, 722 (1985).  In a small number of joint-ownership situations, including tenancies by the entirety and certain homestead estates, the delinquent taxpayer may not have a right to force a partition or alienate the entire property absent the co-owner's consent.  *See Rodgers,* 461 U.S. at 715 (Blackmun, J., concurring in part and dissenting in part) (citing Plumb, Federal Liens and Priorities—Agenda for the Next Decade II, 77 Yale L.J. 605, 634 (1968)).  "If there is no such expectation, then there would seem to be little reason not to authorize the sale." *Rodgers,* 461 U.S. at 711.  Although the nature of Darlene Loreno's property interest is not definitively established on this record, there is no evidence before the Court to suggest that Loreno and his ex-wife hold the Count II and III properties as tenants by the entirety, nor does either property

---

[8] The Court in *Rodgers* also recognized that the Government suffers no prejudice from the denial of a forced sale of jointly-held property "if the taxpayer's indebtedness could be satisfied out of other property to which he had sole and complete title."  461 U.S. at 710 n. 40.  Based on the valuations provided by Loreno in his pretrial statement, *see* n. 7, *supra,* it does not appear that the Government would be able to satisfy its judgment from the properties identified in Counts IV and VII, which are titled solely in Loreno's name.

serve as a homestead for Darlene. Assuming the 320 Main Street and Route 58 Properties are now held by Loreno and his former wife as tenants in common, Darlene would not have any expectancy under Pennsylvania law against a forced sale. *See* 23 Pa. C.S.A. § 3507(a) (providing that, where divorced individuals hold property as tenants in common of equal one-half shares in value, "either of them may bring an action against the other to have the property sold and the proceeds divided between them"). Accordingly, consideration of this factor generally weighs in favor of the Government's request for a judicial sale.

The third *Rodgers* factor requires the Court to evaluate the prejudice to the non-liable third party in terms of both "personal dislocation costs" and "practical under-compensation" if the subject property is sold. *See* 461 U.S. at 711. The Supreme Court in *Rodgers* expressly directed the district courts to consider, relative to this factor, the likely prejudice to innocent third parties who reside at the subject property. 461 U.S. at 711; *id.* at 704.[9] Because the record does not support a finding that Darlene Loreno is living at either the 320 Main Street or Route 58

---

[9] The Court provided the following explanation as to how an innocent third party might be "undercompensated" in such circumstances:

> Although we have held that the Supremacy Clause allows the federal tax collector to convert a non-delinquent spouse's homestead estate into its fair cash value, and that such a conversion satisfies the requirements of due process, we are not blind to the fact that in practical terms financial compensation may not always be a completely adequate substitute for a roof over one's head. ... This problem seems particularly acute in the case of a homestead interest. First, the nature of the market for life estates or the market for rental property may be such that the value of a homestead interest, calculated as some fraction of the total value of a home, would be less than the price demanded by the market for a lifetime's interest in an equivalent home. Second, any calculation of the cash value of a homestead interest must of necessity be based on actuarial statistics, and will unavoidably undercompensate persons who end up living longer than the average. [  ]

461 U.S. at 704 (internal citation omitted and footnote omitted).

Properties, the third *Rodgers* factor is inapposite.[10]  Moreover, there is no evidence before this

Court to suggest that Darlene will otherwise be prejudiced or undercompensated as the result of a

forced sale of the two Mercer County properties in their entireties.  Loreno appears to be arguing

that the Crawford County properties should be sold first because their sale might satisfy the

Government's judgment and thereby eliminate the need for a sale of the Count II and III

properties.  However, no prejudice should result to Darlene from the sale of the Mercer County

properties, provided that she receives the proceeds to which she is otherwise entitled.

The final *Rodgers* factor involves consideration of the character and value of Darlene

Loreno's interest in the subject properties as compared to the interests held by Loreno.  "[I]f, for

example, in the case of real property, the third party has no present possessory interest or fee

interest in the property, there may be little reason not to allow the sale; if, on the other hand, the

third party not only has a possessory interest or fee interest, but that interest is worth 99% of the

value of the property, then there might well be virtually no reason to allow the sale to proceed."

*Rodgers,* 461 U.S. at 711.  Once again, the Court's analysis is somewhat hindered by the lack of

---

[10] In arguing for a deferred sale of the Mercer County properties, Loreno urges this Court to following the rulings in *United States v. Persaud*, 420 F. Supp. 2d 1263 (M.D. Fla. Jan. 18, 2006) and *United States v. Jensen*, 785 F. Supp. 922 (D. Utah 1992).  Both of these cases are readily distinguishable from the case at bar in that they involved situations where the court declined to order a forced sale of a homestead property due to the significant prejudice which the non-delinquent spouse would suffer if evicted from the home.  *See Persaud*, 420 F. Supp. 2d at 1269-70 (court would postpone the forced sale of taxpayer's homestead where, among other things, taxpayer's estranged spouse had resided in the homestead for over 22 years, had used her personal funds to improve the property, had paid for its upkeep, and had three daughters living with her; court found that spouse would be substantially prejudiced if she were evicted from the home and that the proceeds she would likely receive from a forced sale would significantly undercompensate her for her interest in the property); *United States v. Jensen*, 785 F. Supp. 922 (D. Utah 1992) (government could not immediately foreclose its tax lien against taxpayer's undivided one-half interest in a house held by taxpayer and his wife as tenants in common where the wife, who was an innocent third party, had lived in the house for more than 20 years and was in frail health due to advanced cancer; court found that the possibility of undue harm to the taxpayer's wife substantially outweighed any prejudice to the government in delaying the sale of the property).  Because *Persaud* and *Jensen* are materially distinguishable from the instant case, they cannot be read as supporting Loreno's request for a deferred judicial sale of the Mercer County properties.

definitive evidence concerning Darlene Loreno's interest in the subject properties. Absent an order of court stating otherwise, Pennsylvania law provides that the properties of divorced couples are held by the divorced individuals as tenants in common, with each party holding an equal one-half shares in the value of the property. *See* 23 Pa. C.S.A. §3507(a). Thus, Darlene may hold a one-half share interest in the Count II and III properties, but the record is not fully developed on this point. As the Court has previously discussed, there is no evidence to suggest that Darlene has a present possessory interest in either the 320 Main Street or Route 58 Properties.

Based on the foregoing discussion, this Court finds that the considerations outlined in *Rodgers* do not, on balance, support Loreno's argument in favor of a deferred judicial sale of the 320 Main Street and Route 58 properties. The concerns expressed in *Rodgers* have the greatest relevance in cases where the innocent spouse of a delinquent taxpayer is residing on a homestead property which is subject to the government's tax lien. In this case, Darlene is no longer married to Loreno and apparently resides outside of this judicial district. There is no evidence to suggest that she cannot be adequately compensated for her interests in the Count II and III properties from the proceeds of a judicial sale. To the extent Darlene may suffer prejudice as the result of a forced sale, she has not made any attempt to be heard on the matter.

In addition to the foregoing considerations, the Court notes the following. First, the United States has a "paramount interest in prompt and certain collection of delinquent taxes." *Rodgers*, 461 U.S. at 711. That interest is particularly strong in this case, as Loreno has been delinquent in his tax payments for well over a decade. If the Government were required to first pursue foreclosure and sale of the Crawford County properties before attempting to sell the Mercer County properties, it would suffer additional expense and delay because the Crawford

16

County properties at issue in Counts V and VI are currently the subject of disputed interests by third party title holders who were just recently joined in this litigation. Second, deferring the sale of the Mercer County properties potentially prejudices the current title holders to the Count V and VI properties to the extent that those individuals stand to lose any part of their ownership interest in those properties as a result of the Government's foreclosure action. Unlike Darlene Loreno, the newly added Defendants who hold title to the Brown Avenue and Fitch Road properties have answered the complaint and intend to defend their property interests.

Loreno has cited Bank of America's potential interest in the Mercer County Properties as another reason to defer a judicial sale of those parcels. The Bank's potential interest in the Count II and III properties was the subject of the September 17, 2013 stipulation between it and the United States, whereby the parties purported to resolve the issue of their competing claims relative to the Mercer County properties at issue in Counts II, III, and IV. (*See* Stipulation, September 17, 2013, ECF No. 54.) Loreno points out that the parties' stipulation ostensibly contemplated that the United States would seek to satisfy its tax lien from the Crawford County properties (including the Brown Avenue and Fitch Road Properties identified in Counts V and VI) before resorting to the sale of the Mercer County properties identified in Counts II, III, and IV. (*See id.* at ¶ 6.) To the extent the Government's pending motion for partial summary judgment conflicts with the conditions of the September 17, 2013 stipulation between the United States and Bank of America, however, the Court simply notes that counsel for the Bank has been served with the Government's pending motion as well as its prior November 14, 2013 status report wherein the Government stated its intention to pursue summary judgment relative to Counts II, III, IV and VII of the complaint. At no point has Bank of America objected to the Government's attempts to foreclose against, and obtain an order of judicial sale of, the Mercer

County properties identified in Counts II, III and IV. Accordingly, the Court finds no basis to defer the sale of those properties until after an adjudication of the Government's rights relative to the Count V and VI properties.

Loreno's only remaining basis for seeking a deferred sale of the 320 Main Street Property is the fact that his business office is located on that parcel. As the Government points out, however, Loreno's request essentially places his own personal interests above those of the United States, in that the Government's right to foreclose against the 320 Main Street Property has been established, whereas a final adjudication of the Government's right to foreclose against the Brown Avenue and Fitch Road Properties must await further litigation. Such a result runs counter to the principles annunciated in *Rodgers,* wherein the Court observed that there are "virtually no circumstances… in which it would be permissible to refuse to authorize a sale simply to protect the interests of the delinquent taxpayer himself or herself." *See* 461 U.S. at 709.

In sum, the Court having viewed the evidence of record in the light most favorable to Loreno, this Court finds no evidence to support the conclusion that a court order requiring the sale of the Crawford County properties prior to the sale of the Mercer County properties would provide a more just outcome for either party. The United States has met its burden of demonstrating that there is no genuine dispute as to the fact that it has valid and subsisting tax liens and is entitled to foreclose its liens against Loreno's property and rights to property as identified in Counts II, III, IV, and VII of the amended complaint. Accordingly, the United States is entitled to judgment as a matter of law relative to those claims.

## IV. Conclusion

In accordance with the foregoing, the Plaintiff's Motion for Partial Summary Judgment as to Counts II, III, IV, and VII of the amended complaint (ECF No. 56) will be **GRANTED.**

An appropriate Order follows.

McVerry, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **1:10-cv-183** |
| **v.** | ) | |
| | ) | |
| **LARRY A. LORENO, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>ORDER OF COURT</u>

AND NOW, this 26th day of March, 2014, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the

MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 56) filed by Plaintiff, the United

States of America, is **GRANTED.** An order of JUDGMENT will be entered accordingly in

favor of the Plaintiff and against Defendant Larry A. Loreno as to Counts II, III, IV, and VII of

the Amended Complaint.

 **IT IS FURTHER ORDERED, ADJUDGED and DECREED** that the United States of

America has valid and subsisting Federal tax liens on all property and rights to property of Larry

A. Loreno, including his interest in the properties at issue in Counts II, III, IV, and VII of the

Amended Complaint.

 **IT IS FURTHER ORDERED, ADJUDGED and DECREED** that the federal tax liens

relating to Defendant Larry A. Loreno's federal income tax liabilities and attaching to the

properties of Defendant Larry A. Loreno at issue in Counts II, III, IV, and VII of the Amended

Complaint shall be foreclosed.

        BY THE COURT:

        <u>s/ Terrence F. McVerry</u>
        United States District Judge

cc:     **E. Christopher Lambert, Esquire**
Email:  e.c.lambert@usdoj.gov

**Geoffrey J. Klimas, Esquire**
Email: geoffrey.j.klimas@usdoj.gov

**P. Raymond Bartholomew, Esquire**
Email: bmvlaw@hotmail.com

**Kevin Rakowski, Esquire**
Email: krakowski@blankrome.com

**Thomas S. Kubinski, Esquire**
Email: tom@ksslawfirm.com